IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LONNIE ANTHONY SMITH,**

    **The Petitioner-Defendant,**

v.                                                      **Civil Action No. 5:13-cv-63**
                                                       **Criminal Action No. 5:09-cr-7**
                                                       **(Judge Stamp)**

**UNITED STATES OF AMERICA,**

    **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On June 3, 2013, Lonnie Anthony Smith ("The Petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (hereinafter "Motion"). Civil Action No. 5:13-cv-63, ECF No. 1; Criminal Action No. 5:09-cr-7, ECF No. 514.[1] On June 6, 2013, an Order was entered directing the Respondent to file an Answer. ECF No. 515. On July 18, 2013, the Respondent filed its Response. ECF No. 520. On August 22, 2013, the Petitioner filed a pleading which was docketed as a "Reply to Response," which raised the decision in Alleyne v. United States, 133 S.Ct. 2151 (2013). ECF No. 521. On July 29, 2015, the undersigned issued a Report and Recommendation which recommended that the Motion to Vacate be denied and dismissed because the Petitioner's claims of ineffective assistance of counsel were meritless. ECF No. 535. On August 18, 2015, the Petitioner filed objections to the Report and Recommendation in which he maintained that he had never received a copy of the Respondent's Response, and therefore, did not have a fair

---

[1] From this point forward, unless otherwise noted, all docket entries refer to filings in Criminal Action No. 5:09-cr-7.

1

and adequate opportunity to file a Reply as provided for in the Order to Answer. ECF No. 537. On September 24, 2015, the Court vacated the Report and Recommendation and recommitted this matter to the undersigned for a full and fair consideration of the Petitioner's Motion to Vacate. ECF No. 541. On September 28, 2015, the Respondent was directed to file a Supplemental Answer. ECF No. 542. On October 20, 2015, the Respondent filed it Supplemental Response [ECF No. 543], and on November 9, 2015, the Petitioner filed a Reply Memorandum. ECF No. 549. Having carefully reviewed the record, the undersigned now issues this Report and Recommendation on the Petitioner's Motion without holding an evidentiary hearing.

## II.  FACTS

### A.  *Conviction and Sentence*

On April 7, 2009, the Petitioner was charged in three counts of a seven-count Superseding Indictment returned by a federal grand jury in Wheeling, West Virginia.[2] ECF No. 127. The Petitioner was named in Count One of the Indictment for conspiracy to possess with intent to distribute in excess of one kilogram of heroin, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A). Id. Further, the Petitioner was named in Count Two of the Indictment for interstate travel in aid of racketeering of heroin, in violation of Title 18, United States Code, Section 1952(a)(3). Id. Finally, the Petitioner was named in Count Three of the Indictment for use of a telephone to facilitate the distribution of heroin, in violation of Title 21, United States Code, Section 843(b). Id. The Indictment contained forfeiture allegations including a request for a money judgment in the sum of $500,000.00, forfeiture relating to currency, and forfeiture relating to firearms. Id.

---

[2] The Petitioner was originally charged in an Indictment on February 3, 2009. ECF No. 1.

On May 1, 2009, the Petitioner filed a Motion to Suppress Photo Identification. ECF No. 152. Specifically, the Petitioner asserted that the use of a single photograph during interviews of witnesses was unduly suggestive and the witnesses' identifications of the Petitioner were unreliable. Id. On May 7, 2009, the Government filed a Response to the Petitioner's Motion to Suppress Photo Identification. ECF No. 175 at 5. Specifically, the Government asserted the use of a single photograph was not unduly suggestive and did not taint the ability of these witnesses to identify the Petitioner because the witnesses were being asked to identify a person with whom they had conducted numerous drug transactions. Id. at 7. On May 26, 2009, a Pretrial Motions Hearing was held before Magistrate Judge James Seibert. ECF No. 196. On May 28, 2009, Magistrate Judge Seibert filed a Report and Recommendation to deny the Petitioner's Motion to Suppress Photo Identification. ECF No. 197. On August 12, 2009, the Honorable Frederick P. Stamp, Jr., Senior District Court Judge, adopted Magistrate Judge Seibert's Report and Recommendation and denied the Petitioner's Motion to Suppress Photo Identification. ECF No. 273. On August 3, 2009, the Petitioner filed a Motion for Bench Trial. ECF No. 246. On August 10, 2009, by Order, the Honorable Frederick P. Stamp, Jr., Senior District Court Judge, granted the Petitioner's Motion for a Bench Trial. ECF No. 262. The Court conducted a three-day bench trial commencing on August 25, 2009 and concluding on August 27, 2009. ECF Nos. 312, 314, 316. On January 28, 2010, the Court found the Petitioner guilty of all three counts against him and ordered the Petitioner's forfeiture of the specifically identified currency and firearms. ECF No. 401.

Following the verdict, the Court directed the United States Probation Office to prepare a Presentence Investigative Report ("PSR"), which was filed with the Court on April 23, 2010. ECF No. 418. The Petitioner's counsel filed four specific objections to the PSR including:

1. "The drugs found in the Red Roof Inn or from Mr. Salters were never attributed to the Defendant."
2. "Every Government Expert Witness testified that the only way you could tell how much heroin is in a package was to weigh it and test it."
3. "The Defendant was never 'convicted' of any crime as a juvenile. Because he was adjudicated as a delinquent should not be used to increase his criminal history as 'disposition was deferred.' In Pennsylvania Juvenile Records are sealed and not to be used in adult proceedings."
4. "There is no evidence to jump to this conclusion[3] and for the probation officer to say it 'appears' he did something is not the standard."

Id.

On April 23, 2010, the Court conducted the Petitioner's sentencing hearing. ECF No. 417. At the sentencing hearing, the Court overruled the Petitioner's objections to the PSR noted above. Sentencing Hrg. T. at 16:11-25, 17:1-25, 18:1-18, ECF No. 438. The Court sentenced the Petitioner to 262 months of imprisonment to be followed by five years of supervised release. ECF No. 419.

**B.    *Direct Appeal***

---

[3] The Petitioner's counsel refers to "this conclusion" meaning the information contained in the PSR that The Petitioner created a "substantial risk of death or bodily injury to another person." ECF No. 418.

On April 28, 2010, by Counsel, the Petitioner filed a Notice of Appeal in the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). ECF No. 426. The Petitioner argued that the United States failed to present sufficient evidence to support his conspiracy and interstate travel convictions. ECF No. 457. Further, the Petitioner contended that the failure of the United States to recommend the lowest applicable sentence available under the USSG, as promised in the Petitioner's plea agreement of the escape case,[4] constituted plain error. Id. The Fourth Circuit affirmed the judgment of the District Court and dismissed all of the Petitioner's claims. Id. On May 14, 2012, the Petitioner's petition for certiorari was denied by the Supreme Court of the United States, concluding the underlying prosecution and appeal.

## C. Federal Habeas

**1. The Petitioner's Motion**

In his Motion, the Petitioner alleges four claims. Specifically, the Petitioner alleges the following:

1. "Mr. Smith's counsel was prejudicially ineffective for failing to present evidence or argument at the evidence at the suppression hearing to demonstrate that the one-photo lineup was harmful and that the identifications must be suppressed."

2. "Mr. Smith's counsel was prejudicially ineffective for failing to challenge the government's evidence, through cross-examination and other methods, and

---

[4] While housed at Northern Regional Jail ("NRJ"), while awaiting trial on the charges in the instant action, the Petitioner failed in an escape attempt. On July 8, 2009, a federal grand jury returned a Superseding Indictment against the Petitioner, among others, with conspiring to escape from the NRJ. On October 28, 2009, the Petitioner executed a plea agreement agreeing to plead guilty to Count One of the Superseding Indictment. On October 30, 2009, the Petitioner pleaded guilty. Thereafter, the district court held a combined sentencing hearing. See Criminal Action No. 5:09-cr-27

failing to present evidence in defense, to show that Mr. Smith was not a part of the conspiracy charged but engaged in multiple buyer-seller relationships, or at worst, multiple, smaller uncharged conspiracies."

3. "Mr. Smith's counsel was prejudicially ineffective for failing to challenge the government's evidence, through cross-examination and other methods, and failing to present evidence in defense, to show that Mr. Smith did not assist and cause confidential informant Bryan Cottrill to travel interstate."

4. "Mr. Smith's sentencing guideline range was improperly calculated as demonstrated by case law that prospectively applies to his case but that developed after sentencing, or Mr. Smith's sentencing and/or appeal counsel were ineffective for failing to demonstrate that the guideline range was improperly calculated based upon evidence and argument that was available at that time."

ECF No. 514-1.

**2. Government's Response**

In its Response, the Government answers the Petitioner's claims as follows:

1. "Defendant has completely failed to demonstrate that his counsel was ineffective and that Defendant was resultantly prejudiced by this decision."

2. "Defendant has failed to meet his burden of proving either deficient representation or actual prejudice suffered therefrom."

3. "Defendant has failed to meet his burden of proving that his counsel failed to meet an objective standard of legal competency and sufficiency of representation and/or that any prejudice resulted to Defendant."

4. "Defendant's vague claim that his counsel was ineffective for failing to demonstrate that the guideline range was allegedly improperly calculated is simply vague without any substance or specificity. Therefore, Defendant failed to carry his burden with respect to such a claim."

ECF No. 520.

### 3. The Petitioner's Supplement

In his Supplement, the Petitioner asserts a fifth ground for relief in his Motion. Specifically, the Petitioner states, "Smith's counsel was ineffective for not challenging the judge's finding of facts that were improperly found, which was a jurys [sic] duty to have find [sic]." ECF No. 521 at 2-3.

### 4. Respondent's Response to Supplement

The Respondent notes that the Petitioner waived his right to a jury trial and requested a bench trial. The Respondent maintains that by waiving his right to a trial by jury, the Petitioner effectively waived his right to have a jury make any sentencing determinations.

### D.   *Recommendation*

Based upon review of the record, the undersigned recommends that the Petitioner's Motion be denied and dismissed from the docket because his claims of ineffective assistance of counsel claims are without merit, and his reliance on <u>Alleyne</u> is unavailing.

### III.   ANALYSIS

### A.   *Applicable Standard for Ineffective Assistance of Counsel Claims*

The Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. Strickland v. Washington, 466 U.S. 668 (1984). First, the Petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90.

Second, the Petitioner must be prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

**B.     *The Petitioner's Ineffective Assistance Counsel Claims are Meritless***

**1. Use of a Photograph for Identification of the Petitioner**

In his first claim for relief, the Petitioner claims, "Mr. Smith's counsel was prejudicially ineffective for failing to present evidence or argument at the evidence at the suppression hearing to demonstrate that the one-photo lineup was harmful and that the identifications must be suppressed." ECF No. 514-1 at 1. In response, the Government asserts that the Petitioner has completely failed to demonstrate that his counsel was

ineffective and that the Petitioner was resultantly prejudiced by the decision to deny the Petitioner's Motion to Suppress. ECF No. 520 at 29.

As noted above, on May 26, 2009, a Pretrial Motions Hearing was held before Magistrate Judge Seibert concerning the Petitioner's Motion to Suppress. ECF No. 196. During the hearing, the Petitioner's counsel presented an argument claiming the photo identification was impermissibly suggestive and unreliable. ECF No. 435. Specifically, the Petitioner's counsel presented the Supreme Court's and Fourth's Circuit's view criticizing the use of a single photograph as identification stating,

> "The danger of the misidentification, as the Supreme Court stated, is increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw. The preparation of a photographic spread containing pictures of different people is a minor burden for an investigator when measured against the potential prejudice to the accused. And even when more than one photograph is shown, if only one of those photographs in the array represents the defendant, it can still be deemed to be improperly suggestive."

Pretrial Motions Hrg. T. at 6:4-13, ECF No. 435.

Further, the Petitioner's counsel presented an argument about reliability. Specifically, the Petitioner's counsel stated,

> "Many of these persons have been incarcerated and they are also awaiting trial on different charges. There are also situations where the government, their agents, had approached them immediately after an arrest. So, of course, they are going to be more open and willing to talk with the government to make identifications when it knows it is going to help their case."

Id. at 9:22-25, 10:1-3.

However, as the result of testimony at the suppression hearing, Magistrate Judge Seibert found that because the witnesses had numerous opportunities to observe the Petitioner; the witnesses' degree of attention over a long period of time was focused because of personal dealing with the Petitioner; the witnesses' accuracy would be high

because of the many observations of the Petitioner; and most importantly, because the dealings were numerous and over an extended period of time, the identifications derived from a single-photo lineup employed by law enforcement officials, given the totality of the circumstances was reliable. ECF No. 197, p. 3. Following a *de novo* reviewing of the Magistrate Judge's recommendation, this Court adopted said recommendation and denied the motion to suppress. ECF No. 273.

Here, the Petitioner's counsel did present evidence at the suppression hearing suggesting the photo lineup was impermissibly suggestive and unreliable. The mere fact that he was unsuccessful does not render his representation ineffective. Moreover, the Petitioner has not pointed to any additional argument that could have been made. Therefore, the Petitioner's claim is meritless.

### 2. Charged Conspiracy Involvement

In his second claim for relief, the Petitioner asserts, "Mr. Smith's counsel was prejudicially ineffective for failing to challenge the government's evidence, through cross examination and other methods, and failing to present evidence in defense, to show that Mr. Smith was not a part of the conspiracy charged but engaged in multiple buyer-seller relationships, or at worst, multiple, smaller uncharged conspiracies." ECF No. 514-1 at 1. In response, the Government asserts that the Petitioner has failed to meet the burden of proving either deficient representation or actual prejudice suffered therefrom. ECF No. 520 at 31.

In the Petitioner's case, the Government proved beyond a reasonable doubt a conspiracy to possess with intent to distribute and to distribute one kilogram or more of heroin. ECF No. 401. The Court found that the Petitioner, along with a number of other

co-conspirators, knew of the conspiracy and knowingly and voluntarily joined in the conspiracy. Id.

The Petitioner's counsel mounted a defense against the alleged conspiracy by attacking the credibility of the Government's witnesses involved in the conspiracy themselves. For example, during cross-examination of Kenneth Salters, an alleged co-conspirator in the Petitioner's case, the Petitioner's counsel questioned Mr. Salters' credibility by inquiring into the promised leniency from Mr. Salters' plea agreement. The Petitioner's counsel asked Mr. Salters if Mr. Salters had any reason to believe he would not receive the promised leniency for testifying in the case and Mr. Salters answered that he did not. Trial T. at 202:24-25, ECF No. 329.

Further, the Petitioner's counsel questioned Mr. Salters' credibility by inquiring into Mr. Salters' nonattendance of school. The Petitioner's counsel asked Mr. Salters how many days of school he missed out of 200 days and Mr. Salters answered 110. Id. at 206:9-14. Further, the Petitioner's counsel questioned Mr. Salters' credibility by inquiring into what Mr. Salters did when he did not attend school. Specifically, the Petitioner's counsel asked Mr. Salters if he ever played ball out in the street and Mr. Salters replied, "No, I sit on the corner and smoke weed all day." Id. at 206:18-19.

Despite trial counsel's efforts to discredit the veracity of the Petitioner's co-conspirators as well as question the existence of his involvement in the charged conspiracy, the controlled buys, the seizures and the use of a pen register corroborated the trial testimony of the co-conspirators and the charges. Although the Petitioner claims evidence existed that would have proved his lack of involvement in the charged conspiracy, he provides no examples. Therefore, because his claims are nothing more

than self-serving speculation, the presumption of competent representation in favor of trial counsel survives, and the Petitioner has failed to meet his burden of proving either deficient representation or actual prejudice. Under <u>Fields</u>, if the Petitioner shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. 956 F.2d 1290, 1297 (4th Cir.).

### 3. Interstate Travel Assistance

In his third claim for relief, the Petitioner asserts, "Mr. Smith's counsel was prejudicially ineffective for failing to challenge the government's evidence, through cross-examination and other methods, and failing to present evidence in defense, to show that Mr. Smith did not assist and cause confidential informant Bryan Cottrill to travel interstate." ECF No. 514-1 at 2. In response, the Government asserts that the Petitioner has failed to meet his burden of proving that his counsel failed to meet an objective standard of legal competency and sufficiency of representation and that any prejudice resulted therefrom to the Petitioner. ECF No. 520 at 32-33.

During trial, the Government presented evidence of a recorded phone conversation between Mr. Cottrill and the Petitioner to demonstrate the Petitioner's assistance in causing Mr. Cottrill to travel interstate. During the phone conversation, Mr. Cottrill asked the Petitioner if "it was all good" if Mr. Cottrill left "the shop" and "jumped on the highway" and the Petitioner agreed. Trial Ex. 64, ECF No. 296.

The Petitioner's counsel asserted a defense against the alleged interstate travel assistance by attacking the credibility of Mr. Cottrill. For example, during cross-examination, the Petitioner's counsel questioned Mr. Cottril's credibility by inquiring into his cooperation with the police. Specifically, the Petitioner's counsel asked if Mr. Cottrill

had been indicted on federal or state charges involving heroin and Mr. Cottrill replied that he had not been charged. Trial T. at 761:23-25, 762:1-3, ECF No. 331. Further, the Petitioner's counsel asked Mr. Cottrill if he attributed not being charged to his cooperation with the police and his testimony and Mr. Cottrill replied that he did. Id. at 762:4-9.

As illustrated above, the Petitioner's counsel did challenge the alleged interstate travel assistance through cross-examination by attacking the credibility of Mr. Cottrill. Therefore, the Petitioner's claim has no merit.

As previously noted above, even if the Petitioner's alleged ineffective assistance of counsel claim had merit, the Petitioner shows no prejudice from the alleged ineffectiveness of counsel. Under Fields, if the Petitioner shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. 956 F.2d 1290, 1297 (4th Cir.). Therefore, because the Petitioner has failed to address any prejudice, the Court need not address counsel's performance.

### 4. Sentencing Guideline Calculation

In his fourth claim for relief, the Petitioner asserts, "Mr. Smith's sentencing guideline range was improperly calculated as demonstrated by case law that prospectively applies to his case but that developed after sentencing, or Mr. Smith's sentencing and/or appeal counsel were ineffective for failing to demonstrate that the guideline range was improperly calculated based upon evidence and argument that was available at that time." ECF No. 514-1 at 2. In response, the Government asserts that the Petitioner's claim is vague without any substance or specificity; therefore, the Petitioner has failed to meet his burden that his counsel was ineffective for failing to

demonstrate his claim that the guideline range was improperly calculated. ECF No. 520 at 35.

In United States v. Breckenridge, the Fourth Circuit asserted, "The failure of counsel to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel." 93 F.3d 132, 136 (4th Cir. 1996). However, as noted above, the petitioner's counsel filed four specific objections to the PSR and the Guidelines calculation. ECF No. 418.

Counsel's first two objections related to the Probation Officer's reference to various witnesses who testified at trial and evidence concerning the weight of heroin introduced at trial. Id. The District Court found the Petitioner guilty of conspiring to possess with the intent to distribute in excess of one kilogram of heroin. According to the Guidelines, the finding by the District Court resulted in a Base Level of 32, at least one kilogram of heroin but not more than three kilograms of heroin. Although the Probation Officer could have found more than three kilograms of heroin based upon the evidence, as the District Court ruled in overruling objections one and two, the evidence supported the finding of at least one kilogram of heroin. Sentencing Hrg. T. at 16:12-25, 17:1-8, ECF No. 438.

The Petitioner's third objection was to the inclusion of a criminal history point for a prior juvenile conviction. Under U.S.S.G. § 4A1.2(d)(2)(B), a defendant receives one criminal history point for "each…juvenile sentence imposed within five years of defendant's commencement of the instant offense…" On April 19, 2005, the Petitioner was adjudicated delinquent for possession of a firearm, heroin possession, and fleeing and eluding. ECF No. 418 at 21. On August 17, 2006, the Petitioner was placed on

14

probation for the charges. Id. The conspiracy in this case ranged from January 2002 until on or about February 3, 2009. Further, Counts Two and Three of the Superseding Indictment related to a controlled buy which occurred on June 11, 2008. Therefore, whether the date of the instant offense was the conspiracy or the controlled buy, as the District Court ruled, the Probation Officer correctly counted the juvenile adjudication and assigned one criminal history point because the commencement of the instant offenses happened within five years.

The Petitioner's fourth objection was to the enhancement of his guideline calculation for reckless endangerment. Trial testimony established the Petitioner created a substantial risk of harm to a Pennsylvania State Trooper and others while fleeing from police on February 9, 2009. As Leena Spivey, the Petitioner's girlfriend, confirmed, the Petitioner was operating a red Dodge Charger and called her confirming that the "cops" tried to arrest him on February 9, 2009. Further, trial evidence established the Petitioner successfully fled the scene of a buy and bust operation which occurred in the Pittsburgh area on February 9, 2009. ECF No. 331. Special Agent Simala testified that a Pennsylvania State Trooper attempted to make a traffic stop on the Petitioner as he exited the parking lot where the buy and bust was to occur. Id. As the Petitioner entered Noblestown Road, the Pennsylvania State Trooper attempted to pass the Petitioner and block his escape. Trial T. at 678:22-24, ECF No. 331. However, the Petitioner struck the trooper's vehicle twice and eventually disabled the Pennsylvania State Police vehicle and successfully fled the scene. Id. at 678:24-25, 679:1-13. As the District Court ruled, the Petitioner's reckless flight could have seriously hurt the law enforcement agent, others on the highway, and physically harmed

the Petitioner himself. Sentencing Hrg. T. at 18:12-16, ECF No. 438. Therefore, the Probation Officer was correct in enhancing the Petitioner's guideline calculation for reckless endangerment.

As illustrated above, the Petitioner's counsel was not ineffective because counsel did file four objections that were overruled by the District Court. Therefore, the Petitioner's claim lacks merit.

### 5. Challenge of the Judge's Finding of Facts

In his final claim for relief, the Petitioner asserts, "Smith's counsel was ineffective for not challenging the judge's finding of facts, that were improperly found, which was a jurys [sic] duty to have find." ECF No. 521 at 2-3. In advancing this argument, the Petitioner relies on Alleyne v. United States, supra.

In Alleyne, a defendant was convicted by a jury of using or carrying a firearm in relation to a crime of violence under § 924(c)(1)(A). At sentencing, the district judge determined that the defendant had brandished the firearm and sentenced the defendant to a seven-year sentence based upon a mandatory minimum in accordance with the brandishing finding. 133 S.Ct. at 2151. The United States Supreme Court held that the brandishing determination by the sentencing judge was improper because any factual issue triggering a statutory mandatory minimum sentence must be submitted to a jury, rather than determined by a judge at sentencing, because "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to a jury." Id, at 2162.

This decision extended the Supreme Court's prior holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), in which the Court found that any fact which increases the

statutory maximum penalty for a crime as applicable to a specific defendant must be submitted to and decided by a jury. See Simpson v. United States, No. 13-2373 2013 U.S. App. LEXIS 12902 *1 (7th Cir. July 10, 2013) (noting that Alleyne is an extension of Apprendi).

A number of courts that have considered the question thus far have found that Alleyne, in that it is a mere extension of Apprendi, is not intended to be retroactively applied. See id., Crayton v. United States, 799 F.3d 623 (7th Cir. 2015); Butterworth v. United States, 775 F.3d 459 (1st Cir. 2015); United States v. Olvera, 775 F.3d 726 (5th Cir. 2015); Hughes v. United States, 770 F.3d 814 (9th Cir. 2014); Jeanty v. Warden, FCI-Miami, 757 F.3d 1283 (11th Cir. 2014); United States v. Reyes, 755 F.3d 210 (3rd Cir. 2014); In re James Edward Payne, 733 F.3d 1027 (10th Cir. 2013); Ferranti v. United States, 2014 WL 2967944 (E.D. Va. June 30, 2014); United States v. Eziolisa, No. 3:10cr39, 2013 U.S. Dist. LEXIS 102150 *3 (S.D. Ohio July 22, 2013); Affolter v. United States, No. 13-14313, 2013 U.S. Dist. LEXIS 104835 *2 (E.D. Mo. July 26, 2013).

Furthermore, Alleyne is clearly distinguishable from the Petitioner's case. As noted above, on August 3, 2009, the Petitioner filed a Motion for a Bench Trial. ECF No. 246. On August 10, 2009, a Motion Hearing was held before the Honorable Frederick P. Stamp, Jr., Senior District Court Judge. ECF No. 260. During the hearing, Judge Stamp asked the Petitioner if he understood that he had a constitutional right to a trial by jury and the Petitioner advised that he did. Motion Hrg. T. at 4:20-23, ECF No. 437. Judge Stamp asked the Petitioner if he understood the trial by jury procedure and the Petitioner advised that he did. Id. at 4:24-25, 5:1-18. Judge Stamp asked the Petitioner

if the Petitioner understood that he was relinquishing his right to a jury trial indefinitely in this matter and the Petitioner advised that he did. Id. at 5:23-24, 6:1-4. Judge Stamp asked the Petitioner if he understood that if he had a trial by jury, the jury verdict would have to be unanimous and the Petitioner advised that he did. Id. at 6:5-9. Judge Stamp asked the Petitioner if he understood that if he waived his right to a jury trial, the Court alone would determine the question of innocence or guilt and the Petitioner advised that he did. Id. at 6:10-14. The Petitioner advised that no one forced, coerced, or threatened him to waive his right to a jury trial and that the decision was his alone. Id. at 6:20-25.

Further, at the hearing on August 10, 2009, the Petitioner executed a written waiver of a jury trial, pursuant to the Federal Rules of Criminal Procedure 23(a). ECF No. 261. The waiver provided, "I, defendant Lonnie Anthony Smith, having been advised of my right to a trial by jury by my counsel and by the Court do knowingly, intelligently and voluntarily waive my right to a jury trial and request that I be tried by the Court." Id.

By waiving his right to a jury trial, the Petitioner gave up his right to have a jury be the fact finder in his case. Therefore, the holding in Alleyne is clearly not applicable with respect to the Petitioner's sentencing.

Furthermore, Alleyne affirms the use of judicial discretion in "imposing a judgment within the range prescribed by statute." 133 S.Ct. at 2163 (citing Apprendi v. New Jersey, 530 U.S. 466, 481 (2000). In Count One of the Indictment, the Petitioner was charged with conspiracy to possess with intent to distribute and to distribute one kilogram and more of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846 and 841 (b)(1)(A). The Petitioner was found guilty of

that charge which carries a statutory sentence of ten (10) years to life. Here, the sentence of 262 months was within the applicable statutory range, and thus within the Court's discretion to impose.

## IV.     RECOMMENDATION

Based upon review of the record, the undersigned recommends that the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action No. 5:13-cv-63, ECF No. 1; Criminal Action No. 5:09-cr-7, ECF No. 509] be DENIED and DISMISSED because the Petitioner's ineffective assistance of counsel claims are without merit, the decision in Alleyne v. United States is not retroactive to cases on collateral review, and moreover, the Petitioner forfeited any rights bestowed under Alleyne by waiving his right to a jury trial and consenting to a trial by the Court.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objections are made and the basis for such objections.  A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., Senior District Court Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures

for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.  The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the pro se Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED: March 2, 2016**

*/s Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE